468 A.2d 625

**MONTGOMERY COUNTY FIRE BOARD et al.**

v.

**Donald M. FISHER.**

**No. 12, Sept. Term, 1983.**

Court of Appeals of Maryland.

Dec. 28, 1983.

Motion for Reconsideration Denied Feb. 3, 1984.

Richard W. Galiher, Jr., Rockville (Richard W. Galiher, William H. Clarke and Galiher, Clarke & Galiher, Rockville, on brief), for appellants, Montgomery County Fire Bd. and Insurance Co. of North America.

Irving B. Klitzner, Asst. Atty. Gen., Baltimore, on brief, for appellant, Subsequent Injury Fund.

Steven A. Charles, Baltimore (Hardwick, Tripoda & Harris, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

This case focuses upon the statutory presumption contained in the Workmen's Compensation Act, Maryland Code (1979 Repl.Vol.), Article 101, § 64A(a), which provides in pertinent part:

> "Any condition or impairment of health of any paid ... fire fighter ... caused by lung diseases, heart diseases, or hypertension ... resulting in total or partial disability or death shall be presumed to be compensable [as an occupational disease] under this article and to have been suffered in the line of duty and as a result of his employment."[1]

We granted the certiorari petition of the Montgomery County Fire Board (the employer) to consider two issues raised in the petition: (1) whether the Court of Special Appeals erred in finding that "§ 64A was a presumption in the 'Morgan tradition' rather than a Thayer-Wigmore presumption" and (2) whether that court erred in affirming the Commission's finding of compensability despite the Commission's conclusion that absent the presumption it "would not find compensability for the incident alleged herein."

The essential facts are these: Donald M. Fisher, a fire fighter employed by Montgomery County for over ten years, developed arteriosclerotic cardiovascular disease sometime prior to June 2, 1976. On that date, Fisher, who was then thirty-nine years old, attempted to start a broken lawn mower while off duty at home. The exertion precipitated his pre-existing arteriosclerotic cardiovascular disease and he

---

1. The presumption contained in § 64A(a), as to heart diseases and hypertension, also applies to police officers.

suffered a myocardial infarction.[2] He was admitted to the hospital where he remained for seventeen days under the care of Dr. William H. Killay, an internist. After his discharge from the hospital, Fisher visited Dr. Killay periodically for follow-up care. He returned to work with Dr. Killay's permission, starting on September 15, 1976 on light duty status and progressing one month later to limited duty status.

On October 27, 1976, while on limited duty, Fisher drove a fire truck to a call and changed the pump under the wheel on arrival at the scene. Within an hour after driving the fire truck back to the fire station, he experienced severe chest pain. He was again admitted to the hospital where Dr. Killay diagnosed his condition as prolonged angina pectoris.[3] Dr. Robert R. Montgomery, a cardiologist, confirmed

---

2. Commonly known as "hardening of the arteries," arteriosclerotic cardiovascular disease occurs when fatty deposits build up on the inner wall of the body's blood vessels. This reduces the vessels' flexibility and ability to pass blood (consequently increasing blood pressure and the heart's workload) and, if the deposits flake off and block an artery, the condition can lead to a myocardial infarction, a stroke or other forms of localized tissue death. *See generally* I. Schmidt, *Attorney's Dictionary of Medicine* (1980). A myocardial infarction, commonly called a "heart attack," results from the sudden blockage of one or more of the arteries which nourish the heart muscle. The affected area of heart muscle dies from lack of oxygen, and the consequence, at minimum, is a weakened heart or, if severe enough, the victim may die from the resulting cardiac insufficiency. *See* I.C. Difner, *Attorney's Textbook of Medicine,* "Heart Disease," ¶ 30.80 (1968).

3. Angina pectoris is a severe constricting chest pain, often radiating to the left shoulder and down the arm and often accompanied by fainting and a feeling of suffocation and impending death. Angina attacks are usually of short duration, and they are typically precipitated by exertion or excitement. In the majority of cases they are due either to spasm of the coronary arteries plus arteriosclerosis or to arteriosclerosis. *See Stedman's Medical Dictionary* (1966); W.A.R. Thomson, *Black's Medical Dictionary* (1976). Prolonged angina pectoris is an episode manifesting arteriosclerotic cardiovascular disease which falls in between a clear attack of angina pectoris and an unequivocal acute myocardial infarction. Although it produces cardiac pain more severe and prolonged than a classic anginal episode, it does not produce objective findings of myocardial tissue

Dr. Killay's diagnosis. On the advice of both his attending physician and the consultant cardiologist, Fisher retired from the fire department on a disability pension. On November 23, 1976, he filed two claims for occupational disease benefits under § 64A of the Act.

The Commission's Medical Board for Occupational Diseases held a consolidated hearing on Fisher's two claims. In addition to Fisher's testimony, the Medical Board received reports and heard testimony from expert witnesses for the parties concerning whether Fisher's arteriosclerotic cardiovascular disease, which manifested itself in the June 2, 1976 myocardial infarction and the October 27, 1976 angina attack, constituted a compensable occupational disease under the Act. Dr. Killay, the internist who treated Fisher, testified that "there seemed to be a clear temporal relationship between driving the fire truck and the onset of the angina." He also responded to a question about whether Fisher's employment as a fire fighter caused his myocardial infarction by stating that "the emotional stress contributed in all probability to his underlying arteriosclerotic heart disease and thus to his myocardial infarction and his subsequent hospitalization for prolonged angina, yes." Dr. Killay offered the following reason for his opinion that Fisher's employment and his arteriosclerotic cardiovascular disease were causally related:

"I think that we have all felt that emotional factors are operative in coronary artery disease, in the etiology of it. It's only recently that work has begun to be focused in that area, but anyone that has practiced for a long period of time has certainly felt that this factor is operative. We now see that people are becoming interested in this problem and are trying to quantitate it."

Dr. Killay also testified that the First National Conference on Emotional Stress and Heart Disease reached a consensus that emotional stress should be considered a risk factor equal

---

death as a myocardial infarction does. E.L. Sagall and B.C. Reed, *The Heart and the Law* 512 (1968).

to other recognized risk factors. Dr. Montgomery, Fisher's cardiologist, submitted a report stating that "the admission to the hospital on which I saw him [October 27] did occur on duty. This implies a service-connected relationship to [the] episode of angina pectoris but not to the acute myocardial infarction in June."

The two cardiologists who appeared on behalf of the employer said that there was no causal relationship between Fisher's duties as a fire fighter and his arteriosclerotic cardiovascular disease. Dr. Scherlis testified that multiple risk factors[4] present in Fisher's case would increase the probability of his developing arteriosclerotic cardiovascular disease, and that the physical and mental stress connected with Fisher's employment as a fire fighter did not cause or aggravate his arteriosclerotic cardiovascular condition. Dr. Kenner submitted a report in which he stated that "I do not find anything in the history of [Fisher's] illness to suggest that his duties as a fire fighter caused or aggravated his illness."

The Medical Board found that Fisher suffered from disability attributable to atherosclerotic cardiovascular disease,[5] which resulted in a myocardial infarction and subsequent episodes of angina. However, noting the presence of multiple risk factors, the Medical Board concluded that Fisher's occupation neither caused nor aggravated his heart disease and that he did not therefore suffer from an occupational disease.

Fisher petitioned the Workmen's Compensation Commission to review the Medical Board's findings and decision, as authorized by § 29 of the Act. The Commission, without conducting a further hearing, concluded that the Medical

---

**4.** Family history of heart disease, excessive use of tobacco, overweight, and elevated blood triglycerides.

**5.** A specific type of arteriosclerotic cardiovascular disease which affects the intima, or innermost lining, of the arterial wall. *See generally* E.L. Sagall and B.C. Reed, *The Heart and the Law* 408 (1968).

Board was wrong and that Fisher's heart condition did constitute a compensable occupational disease. The Commission found that Fisher was permanently and totally disabled, with fifty percent of that disability attributable to the occupational disease and chargeable to the employer and the other fifty percent attributable to a pre-existing condition and chargeable to the Subsequent Injury Fund.[6] Specifically, the Commission said in its findings:

"1. on and before the event of June 2, 1976 the claimant developed a progressive disease of arteriosclerotic cardiovascular disease; 2. that on June 2, 1976 an event off-duty due to exertion precipitated the preexisting disease and/or disability; 3. that on October 29, 1976 claimant within one hour after the operation of a fire truck had a myocardial infarction; 4. the presumption under Article 101 Section 64A is rebutted by the substantial and overwhelming evidence by Dr. Scherlis, Dr. Kenner and Dr. Montgomery as to the incident of June 2, 1976; 5. the presumption under Article 101, Section 64A, though rebutted by Dr. Scherlis and Dr. Kenner and the testimony of Dr. Killay and Dr. Montgomery are sufficient legally to create compensability as to the incident of October 29, 1976; 6. that the pre-existing disability caused by the incident of June 2, 1976 was 50% industrial disability; 7. that the incident of October 29, 1976 precipitated the pre-existing arterio-

---

6. Section 66(1) of Art. 101 makes provision for payments of additional compensation from the Fund to an injured employee who sustained a compensable injury while previously suffering any kind of permanent impairment due to a previous accident or a disease or any congenital condition, provided that the end result was permanent total disability or permanent partial disability exceeding 50% of the body as a whole. It was the express intent of the Act creating the Subsequent Injury Fund as stated in § 66(1) "to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and the subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability." *See Subsequent Injury Fund v. Chapman,* 11 Md.App. 369, 274 A.2d 870, aff'd, 262 Md. 367, 277 A.2d 444 (1971); *Subsequent Injury Fund v. Pack,* 250 Md. 306, 242 A.2d 506 (1968).

sclerotic cardiovascular disease and the disability of June 2, 1976 and the disability is 100% . . . . "

Further, the Commission said that without the statutory presumption it "would not find compensability for the incident alleged herein." It is thus clear that the Commission found, as to the June 2 event, that the testimony of Doctors Scherlis, Montgomery and Kenner "rebutted" the presumption of compensability and that, in fact, Fisher's heart disease was not work related. The Commission also concluded in no uncertain terms that the presumption, coupled with the affirmative evidence produced by Doctors Killay and Montgomery, constituted legally sufficient evidence that Fisher's disabling heart disease, precipitated by the October 27 event, was caused by his employment. Based on this finding, and the finding of a pre-existing heart condition, as evidenced by the June 2 incident, the Commission concluded that Fisher was permanently and totally disabled.

Both the employer and the Fund appealed to the Superior Court of Baltimore City (now the Circuit Court for Baltimore City) which affirmed the Commission's order. On further appeal to the Court of Special Appeals, that court found no merit in appellants' argument that the Commission had misapplied the statutory presumption of § 64A(a) or had otherwise erred in concluding that the compensation award to Fisher was supported by legally sufficient evidence. *Montgomery Co. Fire Board v. Fisher,* 53 Md.App. 435, 454 A.2d 394 (1983). It held that in enacting § 64A and creating the presumption that disabling heart disease suffered by a fire fighter was work related, the legislature intended that the presumption impose upon the employer both the ultimate burden of persuasion as well as the burden of producing evidence, *i.e.,* that the presumption was one in the so-called Morgan tradition which does not disappear upon generation of an issue for determination by the trier of fact but instead remains in the case as one of the elements to be considered in determining whether the employer met its burden of persuasion. *Id.* at 446, 454 A.2d 394. The employer had the burden of ultimate persuasion, the court

said, "which required that the presumption remain in the case unless and until [it] persuaded the factfinder that the presumption was rebutted." *Id.* While acknowledging that the employer's evidence had successfully overcome the statutory presumption as to the June 2 incident, the court found legally sufficient evidence, based on the presumption and Fisher's affirmative medical testimony, "to support the Commission's conclusion that the pre-existing disease together with the October 27 incident produced a 100% disability, with 50% of the disability due to the pre-existing disability." *Id.* at 447, 454 A.2d 394.

(1)

The employer argues before us that the Commission, by applying an improper standard, viewed the statutory presumption as being "conclusive and irrebutable." It contends that the Thayer-Wigmore theory of presumptions, rather than the Morgan theory, should have been applied as was done by the Supreme Court in *Del Vecchio v. Bowers,* 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229 (1935), a case involving a presumption against suicide contained in § 20(d) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. The difference between the two types of presumptions, the employer says, is that "when the responding party produces evidence to rebut the presumption, in the Morgan presumption the burden of persuasion remains against that party, whereas in the Thayer-Wigmore presumption, the presumption is rebutted and never becomes or remains affirmative evidence in the case." The employer points out that, at the hearing, the Commission made clear that only an "all-inclusive rebuttal" of the presumption would overcome it; such a test, the employer asserts, is contrary to *Grier v. Rosenberg,* 213 Md. 248, 131 A.2d 737 (1957), a case involving a common law rebuttable presumption that the driver of an automobile is the owner's agent or employee who was operating the vehicle within the scope of his employment. In that case, the Court indicated that the defendant might produce evidence so conclusive as to shift the burden of production of evidence back to the plaintiff,

"in which event the defendant would be entitled to a directed verdict, if the plaintiff does not produce evidence in reply, unless there is already evidence in the case tending to contradict defendant's evidence." *Id.* at 254, 131 A.2d 737. The employer maintains that it presented evidence so conclusive that Fisher's heart disease was not work related as to shift the burden of production back to him, and that he failed to meet it. The employer predicates its argument in part on the Commission's statement, made upon rehearing, that Fisher's expert medical witnesses were not more persuasive than the employer's experts.

The employer further claims that without regard to whether the legislature intended the statutory presumption of § 64A(a) to be of the Morgan or Thayer-Wigmore type, it was entitled to a finding in its favor. This is so, it suggests, because the Commission, in its factual finding No. 5, concluded that the presumption of a work-related occupational disease had been rebutted. In this regard, the employer says that because the Commission stated in its factual findings that without the presumption it would not have found the case compensable, and because it viewed the testimony of Doctors Scherlis and Kenner as establishing that Fisher's heart disease was not related to his employment, the evidence was insufficient to support the Commission's conclusion that the pre-existing disease, together with the October 27 incident, produced one hundred percent disability.[7] The employer argues that if substantial evidence supports a conclusion that Fisher is totally disabled, his disability is all due to the pre-existing heart disease and none of it, therefore, is chargeable against the employer. The medical evidence is undisputed, according to the employer, that on October 27 Fisher suffered an angina attack, and not a

---

7. In the proceedings below, the Fund challenged its liability for the pre-existing disability but did not appeal from the lower court's adverse finding on that point. Nor did the Fund seek review on certiorari of the judgment of the intermediate appellate court and we therefore do not here consider any issues concerning the Fund's liability in this case.

myocardial infarction as found by the Commission. It claims that the angina would not have occurred except for the pre-existing heart disease; that no new heart damage was superimposed upon the pre-existing disease and thus Fisher's disability was accountable solely to sequelae of, and permanent damage from, the pre-existing disease and the June 2 myocardial infarction, which the Commission held was not related to Fisher's employment. The employer concludes its argument as follows:

"Since the Commission's opinion in favor of the claimant was based upon its incorrect use of the statutory presumption . . ., and also mistake of fact as to the second infarction, this Court should conclude that the Commission committed reversible error in accepting Appellee's evidence of causal relationship, when the Appellants had produced stronger evidence which entitled them to a finding, 'but for' the presumption. . . . The lower court should have found instead that the presumption should have dropped out of the case after its rebuttal, and not been applied by the Commission as a rule of evidence. Further, the lower court should have recognized that the evidence of the Appellants, admitted by the Commission to be 'more convincing', entitled the Appellants to a finding in their favor."

### (2)

It is not the function of the Court on appeal from an award in an occupational disease case to pass upon the weight of the evidence or resolve a dispute among expert witnesses. *Beth.-Spar. Pt. Shipyard v. Bishop*, 189 Md. 147, 55 A.2d 507 (1947). As §§ 29 and 56 of the Act make clear, the Commission's findings of fact in such cases are final although whether the findings are supported by substantial evidence is a reviewable question of law for the appellate court, if properly raised, as is the question whether the Commission's award is premised on an erroneous conception of the applicable law. *Lovellette v. City of Baltimore*, 297 Md. 271, 465 A.2d 1141 (1983); *Md. Bureau of Mines v.*

*Powers,* 258 Md. 379, 265 A.2d 860 (1970); *Duncan v. McNitt Coal Co.,* 212 Md. 386, 129 A.2d 523 (1957).

We recognized in *Lovellette* that the presumption of § 64A(a) is a rebuttable one of fact. We there said that a number of states have enacted legislation by which the disability of a fire fighter caused by heart disease is presumed to be employment connected; that the Maryland legislature created the presumption in light of the general public knowledge that fire fighters in the course of their daily activities are exposed to inhalation of smoke or noxious fumes and are subjected to unusual stresses and strains; that for purposes of applying the presumption of § 64A(a) it does not matter how the fire fighter contracted the disabling heart disease or how it first became evident since it is presumptively compensable as an occupational disease in any event; and that once the presumption of compensability has been applied, the Commission "must then consider whether it has been rebutted by other evidence in the case showing that non-job related factors either caused or contributed, in whole or in part, to [the fire fighter's] heart disease and, if so, apportion the contribution of each factor accordingly." *Id.* at 285, 465 A.2d 1141.

(3)

We have not heretofore considered whether the presumption of § 64A(a) is of the Morgan or Thayer-Wigmore type. It is, of course, well recognized that the burden of proof is divisible into two parts: the burden of production and the burden of persuasion.

Thayer held the view, which is sometimes called the "bursting bubble" theory, that the sole effect of presumptions is to fix the burden of production of evidence on the party against whom the presumption operates. According to this view, once the opponent of the presumption introduces enough evidence to support a factual finding in his favor the bubble bursts and, as a matter of law, the presumption drops out of the case. Whether the evidence is believed or not makes no difference; the issue proceeds

before the trier of fact as if no presumption ever existed. Thus, Thayer regarded presumptions as merely a procedural device to aid the court in allocating the burden of production. Professor Wigmore held substantially the same view. *See* J. Thayer, *A Preliminary Treatise on Evidence At the Common Law,* chs. VIII and IX (1898); Wigmore, *Treatise on Evidence,* §§ 2490–2491 (3rd ed. 1940).

Professor Morgan espoused the view that a presumption should impose the burden of persuasion as well as the burden of production of evidence on the party against whom the presumption operates. According to this view, the opponent of the presumption must do more than come forward with evidence that might support a finding in his favor. Rather, the opponent has to convince the trier of fact that the nonexistence of the presumed fact is more probable than its existence. Thus, the Morgan view requires that the opponent of the presumption carry both burdens or suffer defeat. Under this view, the presumption never drops out but always remains in the case as affirmative evidence. Morgan's theory applies to presumptions in general and in particular to statutory presumptions created for reasons of social policy. *See* E. Morgan, *Some Observations Concerning Presumptions,* 44 Harv.L.Rev. 906–927 (1931); E. Morgan, *Some Problems of Proof,* 74–81 (1956); E. Morgan, *Basic Problems of Evidence,* 30–41 (1954); Forward, *Model Code of Evidence,* 54–65 (1942).

(4)

■ We think the legislature intended that the Morgan type presumption be applied in adjudicating cases arising under § 64A(a). Undoubtedly, as we first recognized in *Bd. of Co. Comm'rs v. Colgan,* 274 Md. 193, 334 A.2d 89 (1975), and again in *Lovellette, supra,* § 64A(a) is reflective of a social policy affording preferential treatment to fire fighters disabled by heart disease. Although the presumption of compensability is a rebuttable one of fact, the legislature manifestly intended that the statute impose a formidable burden on the party against whom it operates. Accordingly, both the burden of production and the burden of persuasion

remain fixed on the employer; neither ever shifts to the claimant and the presumption constitutes affirmative evidence on the fire fighter's behalf throughout the case, notwithstanding the production of contrary evidence by the other side.

The Thayer-Wigmore theory of presumptions is simply inappropriate in occupational disease cases brought under § 64A(a) because the presumption of compensability is too easily rebutted. It is extremely unlikely in any case that the presumption's adversary would fail to produce some evidence that heart disease was not due to the fire fighter's employment; thus, if the Thayer-Wigmore approach to presumptions were applied, practically every case would be decided without the benefit of the statutory presumption, thereby emasculating the presumption and subverting the clear legislative policy which undergirds § 64A(a).[8]

That the Supreme Court in *Del Vecchio v. Bowers, supra,* treated the statutory presumption against suicide contained in the federal Longshoremen's and Harbor Workers' Compensation Act as one of the Thayer-Wigmore type does not require that we afford the same treatment to the § 64A(a) presumption of compensability. Manifestly, we are not bound by *Del Vecchio* in interpreting the procedural effect to be applied in interpreting a Maryland statute. Nor are we bound by Rule 301 of the Federal Rules of Evidence, which was adopted after *Del Vecchio,* requiring federal courts to apply presumptions according to the Thayer-Wigmore theory unless otherwise directed by statute. Moreover, Rule 302 of the Federal Rules of Evidence requires federal courts to apply presumptions in accordance with

---

**8.** A number of states have statutes similar in purpose to § 64A. A. Larson, *Workmen's Compensation Law,* Vol. 1 B (1982), says in § 41.72 that the "commonest controversy" generated by these statutes has centered around the strength of the presumption and what evidence is required to rebut or overcome it. Citing numerous cases as examples, Larson states that "[t]he possible grounds for rebutting the presumption vary so widely that the end product varies from a virtually irrebuttable to a virtually worthless presumption." § 41.-72(a).

state law when the underlying claim is governed by state law. Maryland cases have recognized that in criminal prosecutions the only legitimate presumption that may be utilized consistent with due process considerations is one of the Thayer-Wigmore type, *Evans v. State,* 28 Md.App. 640, 349 A.2d 300, *aff'd,* 278 Md. 197, 362 A.2d 629 (1975), but that in civil cases presumptions are generally applied in accordance with the Morgan tradition. *See Keeney v. Prince George's County,* 43 Md.App. 688, 406 A.2d 955 (1979) (statutory presumption favoring foster care agencies over natural parents in cases where a child has been in agency care for two years); *Plummer v. Waskey,* 35 Md.App. 470, 368 A.2d 478 (1977) (common law presumption of revocation of a will).

Nothing in *Grier v. Rosenberg, supra,* upon which the employer places reliance, lends support to the argument that a Thayer-Wigmore presumption should be applied to § 64A(a) cases. As we have already observed, *Grier* involved a rebuttable common law presumption, based solely on probability and not, as here, upon a statutory presumption based largely on a legislatively mandated social policy of presuming that fire fighters disabled by heart disease contracted the disease in the course of their stressful employment. At most, *Grier* supports the proposition that in some circumstances, in dealing with common law presumptions, the burden of production may shift back to the plaintiff where the defendant's rebuttal evidence in contradiction of the presumption appears conclusive.

(5)

The Commission in this case properly treated the § 64A(a) presumption as affirmative evidence throughout the case in the Morgan tradition, notwithstanding the employer's introduction of contrary evidence. The Commission did not, as the employer suggests, treat the presumption as irrebuttable. On the contrary, it expressly stated that the presumption was not "a conclusive but a rebuttable presumption." As to the June 2 myocardial infarction, the Commission considered and weighed the presumption as affirmative evidence, together with the conflicting expert medical evidence

offered by both parties. It found that the employer's evidence not only overcame the presumption but in addition established to the Commission's satisfaction that Fisher's heart disease, as of June 2, 1976, was not causally related to his employment as a fire fighter. As to the October 27 angina attack, which occurred while Fisher was at work, the Commission again considered and weighed the presumption as affirmative evidence, together with both Fisher's and the employer's expert medical evidence. It concluded that the presumption spelled the difference in Fisher's favor in resolving the conflicting evidence concerning the compensability of the October 27 incident, even though absent the presumption as affirmative evidence of compensability, the Commission would not have found for Fisher.

However illogical the finding may seem that Fisher's heart disease as of June 2, 1976 was not work connected, while four months later it was found to be fifty percent related to his employment, that determination was solely for the Commission based on its resolution of the conflicting evidence before it. Whether as a matter of law the evidence was legally sufficient to support the Commission's finding was not a question raised in the certiorari petition. Nor was the question raised as to whether Fisher is in fact permanently and totally disabled as found by the Commission. What is challenged is the evidentiary basis for the Commission's action. Plainly, there was an evidentiary basis for the Commission's finding, utilizing the presumption as affirmative evidence that Fisher's disability as of October 27 was compensable as an occupational disease.

■ The Commission in its findings of fact erroneously stated that Fisher's disability of October 27 resulted from a myocardial infarction. In the circumstances, however, the Commission's error does not require a remand for further proceedings. A review of the entire record clearly demonstrates that the Commission, in extended colloquy with counsel, and in the preliminary part of its written findings, fully understood that Fisher suffered from prolonged angina

pectoris on October 27 and not from a myocardial infarction. Whether manifesting itself by an angina attack or a myocardial infarction, Fisher's underlying heart disease was found to be one hundred percent disabling in any event, fifty percent by way of pre-existing nonwork-related impairment and the remainder by the heart disease diagnosis of October 27, 1976.

JUDGMENT AFFIRMED; WITH COSTS.