674 A.2d 98

**MONTGOMERY COUNTY, Maryland**

v.

**Austin A. PIRRONE, Jr.**

**No. 1037, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

April 2, 1996.

202

**204**

Joann Robertson, Senior Assistant County Attorney and John S. Joseph, Associate County Attorney (Charles W. Thompson, Jr., County Attorney and James J. Cagley, Associate County Attorney, on the brief), Rockville, for appellant.

Kenneth M. Berman (Berman, Sobin & Gross, on the brief), Gaithersburg, for appellee.

Argued before MOYLAN, BLOOM and WENNER, JJ.

WENNER, Judge.

Montgomery County, Maryland, appealing from a judgment of the Circuit Court for Montgomery County, entered in favor of appellee, Austin A. Pirrone, presents us with the following questions:

(1) Did the lower court err when it denied appellant's Motion for Summary Judgment and applied the presumption of compensability under Article 101, § 64A(a)(1) to a Workers' Compensation claim filed by a nearly two-year retired fire-fighter/paramedic who had voluntarily retired for non-medical reasons?

(2) Did the lower court err when it refused to provide requested jury instructions of appellant when it instructed the jury, and/or when it responded to jury questions?

(3) Did the lower court err when it denied appellant's Motions for Judgment?

Finding no error, we shall affirm the judgment of the circuit court.

## Former Proceedings

On 22 May 1990, appellee filed a claim with the Workers' Compensation Commission ("Commission") claiming to have suffered a heart attack because of his many years as a fire fighter. His claim was based upon Article 101, § 64(a) of Maryland's Workers' Compensation Law which, among other

things, provides a presumption of compensability in favor of fire fighters [1] suffering from heart related illnesses.

After a hearing officer determined that Article 101 § 64A(a)(1) covers retired fire fighters, the Commission concluded that "[a]ppellee had sustained an occupational disease arising out of and in the course of employment." Appellant then noted an appeal to the Circuit Court for Montgomery County.

Appellant's subsequent Motion for Summary Judgment was denied. At trial, appellant once again moved for summary judgment after playing for the trial court a *de bene esse* video deposition of an expert witness, endeavoring to reveal a lack of connection between appellee's condition and his years as a fire fighter/paramedic. The motion was denied. Appellant then moved to have the case remanded to the Workers' Compensation Commission. That motion was also denied.

The trial court then granted appellee's motion for summary judgment, concluding that appellee had suffered an occupational disease as a result of his employment as a fire fighter/paramedic.

Undaunted, appellant journeyed to Annapolis, where, in an unreported per curiam opinion, we declined to decide whether Article 101, § 64A(a)(1) applied to retired fire fighters but concluded that appellant had presented sufficient evidence to rebut § 64A(a)(1)'s presumption of compensability. We reversed the judgment of the circuit court and remanded the case to that court for further proceedings.

On remand, appellant again moved for summary judgment which was again denied. Following a three day trial, the jury returned a verdict in favor of appellee. Appellant again noted an appeal.

---

**1.** Article 101 § 64A has been recodified as Md.Code Labor and Employment § 9–503 (1991, 1995 Supp.).

## Facts

Appellee had been a fire fighter/paramedic for various fire departments for twenty-eight (28) years, twenty-one (21) of those years for Montgomery County. In January of 1988, appellee took an early retirement. On 30 October 1989, he suffered a heart attack. At the time of the attack, appellant was working two jobs for approximately 50 to 55 hours per week.

In a hearing before the Commission, appellee presented medical evidence from a board certified cardiologist who opined that appellee's heart attack was precipitated, at least in part, by his years as a fire fighter/paramedic. Appellee's cardiologist also testified that there was insufficient time between appellee's retirement and heart attack to account for the level of progression of appellee's coronary artery disease. In short, appellee's expert felt that it had taken more than two years for appellee's condition to ripen into a heart attack.

At the Commission's hearing, appellant offered no rebuttal evidence, merely asserting that appellee was not covered by Article 101, § 64A(a)(1). The Commission, however, concluded:

(1) [Appellee] sustained an occupational disease arising out of and in the course of employment, under the provisions of Article 101, § 64A(a)(1) (heart disease); and

(2) the first date of the disablement was October 30, 1989; and

(3) the disability of [appellant] is the result of the occupational disease; and

(4) as a result thereof, was temporarily totally disabled from October 31, 1989 through March 15, 1990 inclusive; and

(5) that the employer and insurer shall pay medical expenses in accordance with the Medical Fee guide of this Commission.

At trial, appellant also produced a board certified cardiologist. Appellant's cardiologist opined that appellee's heart

attack was more likely to have been precipitated by appellee's continuing elevated cholesterol and triglyceride levels as well as appellee's having been an incessant smoker since he was 18 years old, concluding that:

> [Appellee's] occupation had nothing to do with what was going on in his arteries. No matter what occupation [appellee] had, he was destined to develop coronary artery disease and have a heart attack ... Patients with high cholesterol, patients with cigarette smoking to this degree, have a great risk of developing coronary artery disease and developing a heart attack, as is commonly known, and that is irrelevant to what occupation a patient is in.

Predictably, appellee's cardiologist concluded otherwise. Although he was unable to apportion the role of multiple risk factors such as smoking, elevated lipid levels, and job stress [2] in the development of appellee's coronary artery disease, appellee's cardiologist nonetheless maintained that appellee's having been a fire fighter/paramedic for 28 years contributed to his eventual heart attack.

## Discussion

### I.

Appellant first contends that the trial court erred in denying its Motion for Summary Judgment, having mistakenly concluded that Article 101, § 64A(a)(1) entitled appellee to a presumption of compensability. As this is a question of law, we must determine whether the trial court was legally correct. *Beatty v. Trailmaster*, 330 Md. 726, 737, 625 A.2d 1005 (1993).

Article 101, § 64A(a)(1) provides in pertinent part:

> Any condition or impairment of health of any paid municipal, county, State, airport authority or fire control district, fire fighter or fire fighting instructor caused by lung diseases, heart diseases, or hypertension, and any condition or

---

**2.** Appellee produced a parade of witnesses, each describing the various stresses paramedics and fire fighters are exposed to on a daily basis. They ranged from sleepless nights to poor dietary habits to accidents involving children.

impairment of health * * * caused by heart diseases or hypertension resulting in total or partial disability or death *shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of his employment* (emphasis added).

According to appellant, as appellee suffered a heart attack after retiring, he was not a *paid* fire fighter and therefore not entitled to § 64A(a)(1)'s presumption of compensability. We do not agree. To the contrary, after examining § 64A(a)(1)'s legislative history and the relevant opinions of the Court of Appeals, we do not believe appellee's retirement deprived him of § 64A(a)(1)'s coverage. In fact, we believe the insidious and often elusive nature of occupational diseases compels the opposite conclusion.

■■■ Although the Court of Appeals has recognized that prior to the enactment of § 64A(a)(1) "heart disease [was] not generally recognized as an occupational disease," *Lovellette v. Mayor and City Council of Baltimore*, 297 Md. 271, 284, 465 A.2d 1141 (1983), the enactment of § 64A evidenced "the legislature's clear intention to afford fire fighters ... a presumption that the disease was work related." *Id.* In short, "it does not matter how the fire fighter contracted the disabling heart disease or how it first became evident since it is presumptively compensable as an occupational disease[.]" *Montgomery Co. Fire Bd. v. Fisher*, 298 Md. 245, 256, 468 A.2d 625 (1983).

■■■ As in the present case, "[w]hen the issue is who must pay compensation, it is the date of [the] last injurious exposure to the hazard of the disease, and not the date of disability that governs." *James v. General Motors Corp.*, 74 Md.App. 479, 486, 538 A.2d 782 (1988) (citing *Shifflett v. Powhattan Mining Co.*, 293 Md. 198, 203, 442 A.2d 980 (1980)). Appellant attempts to circumvent *James* by asserting that appellee was not suffering from coronary artery disease when he retired, and thus was not suffering from an occupational disease at the time of his last injurious exposure. Both cardiologists con-

ceded at trial, however, that appellee was suffering from coronary artery disease [3] while still a fire fighter/paramedic.

■ Even a conclusion that appellee was not suffering from coronary artery disease on his retirement, would be of no avail to appellant. As the Court of Appeals observed in *Montgomery County v. Fisher*, "[o]nce the presumption of compensability has been applied, the Commission 'must then consider whether it has been rebutted by other evidence in the case showing that non-job related factors either caused or contributed, in whole or in part, to [the fire fighter's] heart disease....'"

As appellant sees it, in order to be entitled to § 64A(a)(1)'s presumption, appellant must have been employed as a fire fighter/paramedic on 30 October 1989, the date of his last injurious exposure to the hazard of the disease.[4] We disagree.

■ We reiterate that the purpose of Article 101 § 64A(a)(1) was:

---

3. More commonly known as arteriosclerosis, or hardening of the arteries—a condition ordinarily preceding heart attacks.

4. Appellant attempts to analogize the case at hand to two Connecticut cases involving a statute somewhat similar to Art. 101 § 64A. In *Gorman v. City of Waterbury*, 4 Conn.App. 226, 493 A.2d 286 (1985) it was held that two widows were not entitled to workers' compensation benefits under Conn.Gen.Stat. § 7–433c because the first widow's husband was a retired police officer who died from a coronary occlusion six (6) years prior to the enactment of the statute and was not entitled to its retroactive application; and a second widow's husband who suffered from no hypertensive condition while a member of the police department as required by the statute.

Likewise, the *Adams v. City of New Haven*, 39 Conn.Supp. 321, 464 A.2d 70 (1983), court determined that the same statute did not apply to a police officer who was not regularly employed by the municipal police department either on the date the statute became effective, or on the date of his death.

We fail to see any analogy because Conn.Gen.Stat. § 7–433c differs from Article 101 § 64A. Section 7–433c requires that the death or disability of the covered employee be "caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment." Section 64A has no such requirement.

to grant fire fighters a presumption that a disability arising from lung and heart diseases was suffered in the line of duty and as a result of their employment [, and to reinforce the notion that] [t]here is general public knowledge that fire fighters in the course of their daily activities, are exposed to inhalation of smoke or noxious fumes and are subjected to unusual stresses and strains (citations omitted).

*Soper v. Montgomery County,* 294 Md. 331, 335–36, 449 A.2d 1158 (1982). Thus, it would be anomalous to hold that appellee is not entitled to § 64A(a)(1)'s presumption.

■ In appellant's view, a fire fighter who works for one year and suffers a heart attack is entitled to § 64A(a)(1)'s presumption of compensability, while one who is a fire fighter for 28 years, retires, and then suffers a heart attack, is not. In our view, however, we believe that § 64A "should be construed as liberally in favor of [fire fighters] as its provisions will permit in order to effectuate its benevolent purposes." *Soper,* 294 Md. at 335, 449 A.2d 1158.

■ We are mindful that after the last injurious exposure to a hazard and the conclusion of employment the nexus between an occupational disease and an occupation becomes increasingly remote. In our view, however, this simply makes § 64A(a)(1)'s presumption easier to rebut, but in no way renders it inapplicable.

Accordingly, we conclude that appellee is entitled to § 64A(a)(1)'s presumption of compensability.

## II.

Appellant next contends that, even assuming § 64A(a)(1) applies to appellee, the trial court erred in instructing the jury and in declining to give appellant's proposed jury instructions. Once again, we disagree.

■ We begin by noting that "[a] trial judge is permitted wide discretion as to the form of jury instructions and, absent a clear abuse of that discretion, will not be reversed on appeal." *Blaw–Knox Constr. Co. v. Morris,* 88 Md.App. 655,

667, 596 A.2d 679 (1991) (citing *Nora Cloney & Co. Inc. v. Pistorio,* 251 Md. 511, 515, 248 A.2d 94 (1968).

 Despite appellant's principal contention that "the trial court's instruction treated § 64A(a)(1) as an irrebuttable presumption and required a complete non-connection to employment," we find nothing in the trial court's instruction supporting such a conclusion. As the Court of Appeals pointed out in *Montgomery Co. Fire Bd. v. Fisher, supra,*

> both the burden of production and the burden of persuasion remain fixed on the employer; neither ever shifts to the claimant and the presumption constitutes affirmative evidence on the fire fighter's behalf throughout the case, notwithstanding the production of contrary evidence by the other side.

*Fisher,* at 257–58, 468 A.2d 625. Viewing the instructions as a whole, *See Nora Cloney & Co., Inc. v. Pistorio,* 251 Md. 511, 515, 248 A.2d 94 (1968), we conclude that the trial court did not err in instructing the jury. In fact, the trial court pointed out to the jury that

> in this case, the employer responsible for [appellee] for his heart disease and resulted [sic] heart attack, assuming you believe these to be predominantly caused by an occupation, is the last employer for whom [appellant] was working when he was last injuriously exposed to the hazards of heart disease.
>
> \* \* \* \* \* \*
>
> In this state a paid fire fighter or a paid fire fighter ... who is a covered employee under this title is presumed as a matter of law to have an occupational disease that was suffered in the line of duty and is compensable under this provision.

Although the trial court did not expressly declare § 64A(a)(2)'s presumption of compensability to be rebuttable, we think its instructions adequately conveyed to the jury that § 64A(a)(1)'s presumption of compensability imposes "the burden of persuasion as well as the burden of production of evidence on the party against whom the presumption oper-

ates." In other words, "the opponent of the presumption must do more than come forward with evidence that might support a finding in his favor." *Fisher*, 298 Md. at 257, 468 A.2d 625.

Although "a litigant is entitled to have [its] theory of the case presented to the jury, [and] a trial court is required to give the requested jury instructions (1) if it correctly states the law, and (2) if the law is applicable," *Rock v. Danly*, 98 Md.App. 411, 420, 633 A.2d 485 (1993), appellant's proposed jury instruction No. 2 refers to Article 101, § 23(c)(1),[5] as requiring that "it must be shown 'that it is more probable than not that the disability is causally related to the alleged employment and that no other intervening agency was responsible for the disease.'" What appellant apparently fails to understand is that § 64A(a)(1)'s presumption of compensability controls. Thus, appellant has not only the burden of presenting evidence to rebut § 64A(a)(1)'s presumption of compensability, but the burden of persuading the jury that appellee's heart attack did not result from an occupational disease. In short, it "must do more than come forward with evidence that might 'rebut that presumption.'" *See Fisher*, *supra.* To suggest that appellee need show "that it is more probable than not that the disability is causally related to the alleged employment and that no other intervening agency was responsible for the disease" would impose the burden of proof on the claimant. To do so would run contrary to the holding in *Fisher*, *supra.*

Appellant also complains that the trial court erroneously replied in the negative to the jury's question, "Does the cause of the disease have to be *predominately* his occupation?" resorting again to Article 101 § 23(c)(1), asserting that an

---

5. **Article 101, § 23. Who not entitled to benefits; what employer and insurer liable; amount of compensation; when disease compensable.**

(c) *When diseases compensable.*—An employer shall not be liable for any compensation for an occupational disease unless:

(1) Such disease is due to the nature of an employment in which the hazards of the disease actually exist, and it may reasonably be concluded based on the weight of the evidence, that the disease was incurred as a result of his employment; or * * *

occupational disease must be proven by "the weight of the evidence ... more than fifty percent more likely so than not so." We again point out to appellant that an employee's occupation need be only a factor in order for the employee's disease to be presumed compensable under § 64A.[6] Therefore, the trial court did not abuse its discretion in declining to give appellant's proposed jury instructions.

## III.

Appellant finally contends that the trial court erred in denying its motion for judgment. We need not linger long here. "It is well established in Maryland,[7] that if there is any competent evidence, however slight, leading to support the plaintiff's right to recover, the case must be submitted to the jury and the motion for 'judgment' denied." *Montgomery Ward & Co. v. McFarland*, 21 Md.App. 501, 513, 319 A.2d 824 (1974).

Appellant once again overlooks § 64A(a)(1)'s presumption of compensability. As the Court of Appeals said in *Fisher*, "the presumption constitutes affirmative evidence on

---

6. Appellee correctly points out that former Article 101 § 22, now Md.Code Ann. Labor and Employment § 9–608, states in pertinent part that:

(c) *Occupational disease aggravating other infirmity or contributing to disability or death from other cause.*—Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or where disability or death from any other cause, not itself compensable, is aggravated, prolonged, accelerated or in anywise contributed to by an occupational disease, the percentage of such contribution to be determined by the Workmen's Compensation Commission, the compensation payable shall be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability or death * * *.

7. Rule 2–519(b) **Disposition.**—When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

the fire fighter's behalf throughout the case." *Id.* at 258, 468 A.2d 625. While there may well be circumstances under which § 64A(a)(1) would not generate a question of fact, this is not one of them. That is especially so in light of § 64A(a)(1)'s presumption of compensability and the conflicting testimony of the parties' cardiologists.

Although appellant contends that "both medical experts agreed that [appellee's] heart disease was caused by his cigarette smoking and high cholesterol and elevated triglycerides," we find scant support for that contention in the record. To be sure, appellant's cardiologist adopted that position, but appellee's cardiologist simply opined that cigarette smoking was but one of several factors leading to appellee's heart attack. While it may be true that the stress of being a fire fighter/paramedic neither causes or leads to coronary artery disease or heart disease, the legislature has determined otherwise.[8]

Although appellant invites us to revisit the testimony of the cardiologists, we decline to do so. The jury was entitled, as it obviously did, to accept the opinion of appellee's cardiologist rather than that of appellant's cardiologist. *See Yellow Cab v. Bisasky*, 11 Md.App. 491, 506, 275 A.2d 193 (weight of medical expert's testimony is for jury). In short, there was sufficient evidence for the jury to conclude that appellee's coronary artery disease, leading to a heart attack, resulted from his serving 28 years as a fire fighter/paramedic, thus entitling him to compensation under § 64A(a)(1).

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

**8.** Appellant directs our attention to *Huffman v. Koppers Co.*, 94 Md.App. 180, 616 A.2d 451 (1992) wherein we noted the disputed relationship between stress and heart attacks. Since *Huffman* did not involve a legislatively created presumption, it is of no avail to appellant.