785 A.2d 749

**CITY OF FREDERICK, et al.**

v.

**Donald SHANKLE.**

**No. 24, Sept. Term, 2001.**

Court of Appeals of Maryland.

Dec. 4, 2001.

6

Michael J. McAuliffe (Quinn, McAuliffe & Rowan, on brief), Rockville, for petitioners.

Kenneth M. Berman (Alan B. Gross of Berman, Sobin & Gross, L.L.P., on brief), Gaithersburg, for respondent.

Thurman W. Zollicoffer, Jr., City Sol. for Baltimore City, Charles W. Thompson, Jr., County Atty., Rockville, on brief of Amici Curiae, Mayor and City Council of Baltimore City, Montgomery County and Prince George's County on behalf of petitioners.

P. Matthew Darby, Albertini, Singleton, Gendler & Darby, L.L.P., Baltimore, on brief of Amicus Curiae Md. Trial Lawyers Ass'n on behalf of respondent.

Molly A. Elkin, Thomas A. Woodley, Erick J. Genser, Denise M. Dunkin, Woodley, Genser & McGillivary, Washington, DC, on brief of Amicus Curiae Intern. Ass'n of Fire Fighters on behalf of respondent.

8

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

WILNER, Judge.

The issue before us in this workers' compensation case is whether, when a police officer (or fire fighter) seeks compensation for heart disease as an occupational disease and relies on the presumption of compensability provided in Maryland Code, § 9–503 of the Labor and Employment Article (LE), a medical expert retained by the employer may be permitted to testify that stress from police work is never a factor in causing heart disease. The Circuit Court for Frederick County said "no," the Court of Special Appeals said "no" (*Frederick v. Shankle*, 136 Md.App. 339, 765 A.2d 1008 (2001)), and we shall say "no."

## BACKGROUND

The Maryland Workers' Compensation Act requires employers to pay certain workers' compensation benefits to covered employees who suffer disability resulting from an occupational disease. LE § 9–502. Under that provision, the employer is liable only if (1) the occupational disease that caused the disability either (i) is due to the nature of an employment in which the hazards of the occupational disease exist and the employee was employed before the date of disablement, or (ii) has manifestations that are consistent with those known to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment in which the employee was employed before the date of disablement; and (2) on the weight of the evidence, it reasonably may be concluded that the occupational, disease was incurred as a result of the employment.

Ordinarily, the burden is on the claimant to show that he/she comes within the provisions of the occupational disease statute—that the claimant suffers from an occupational disease that was incurred in his/her employment. *Maryland Bureau of Mines v. Powers*, 258 Md. 379, 384, 265 A.2d 860,

862 (1970); *Mutual Chemical Co. v. Thurston*, 222 Md. 86, 94, 158 A.2d 899, 903 (1960); *see also King v. Board of Education*, 354 Md. 369, 731 A.2d 460 (1999). In LE § 9–503(b), however, the Legislature has created a limited presumption of compensability in favor of police officers who contract heart disease or hypertension. In relevant part, that section states that a paid police officer "is presumed to be suffering from an occupational disease that was suffered in the line of duty and is compensable under this title if: (i) the police officer ... is suffering from heart disease or hypertension; and (ii) the heart disease or hypertension results in partial or total disability or death."

Donald Shankle was employed as a police officer for the City Frederick from 1974 to 1996. On April 2, 1996, he filed a workers' compensation claim, asserting that he was suffering from occupational heart disease due to the stress of his job as a police officer for over 20 years. There is no dispute that Shankle actually suffers from heart disease; in May, 1996, he underwent by-pass surgery. The Workers' Compensation Commission found that he sustained a compensable occupational heart disease in the course of his employment and awarded him benefits for two periods of temporary total disability. The city sought judicial review.

In preparation for trial in the Circuit Court, the city took the *de bene esse* deposition of Dr. Alan Wasserman, whose general expertise as a cardiologist is not in dispute. Dr. Wasserman began his testimony by describing coronary artery disease as a buildup of plaque and fatty tissue in the (coronary) arteries, which eventually can cause an obstruction that reduces the blood flow in times of stress. He noted, in addition, that the plaques can break and bleed and that, when they do, they can cause a blood clot that, itself, may obstruct the blood flow and cause a heart attack. Dr. Wasserman then identified a number of "risk factors," or circumstances that make one more likely to develop heart disease. The five generally recognized risk factors, he said, were family history, male gender, diabetes, high cholesterol levels, hypertension, and smoking, but he observed that other factors had been recognized in recent years as well, among them insulin resis-

tance and high levels of homocystine, fibrinogen, and PAI or PAI–1 resistance (which he did not further identify). Dr. Wasserman noted that some people believed that obesity and a sedentary life style were also risk factors, and, although he accepted that a sedentary life style might be such a factor, he did not believe that obesity was one.

Although Dr. Wasserman never examined Officer Shankle, he reviewed Shankle's medical records and, from those records, concluded that Shankle had at least four, and likely had all five, of the generally recognized risk factors: his father died suddenly at age 60 and, without any direct knowledge of the event, Wasserman presumed merely from the suddenness of the demise that the cause of death was heart disease, thus giving Shankle a family history of heart disease;[1] Shankle was obviously a male; he had an elevated cholesterol level, particularly the "bad" or LDL cholesterol; he may have had hypertension, although that was not entirely clear; and he was a smoker.

The part of Wasserman's testimony that generated the issue now before us concerned his belief that there was utterly no correlation between job stress and heart disease. He first expressed the view in terms of Shankle individually, opining that his occupation "played no role" in the development of his coronary artery disease. That conclusion, it was later revealed, was based on his broader belief, from 20 years of experience and from teaching preventive medicine "that it is not accepted in the medical community that stress causes coronary artery disease or is a risk factor for it." He added that "[t]here is no body of literature that is accepted in the cardiac field that says that stress is a risk factor for coronary artery disease." When confronted with § 9–503, Dr. Wasserman made clear that he rejected the premise of the statute that "being a policeman or fireman contributes to the development of the coronary artery disease." It was irrelevant, he said, what a police officer's duties were; stress simply did not cause heart disease. In-

---

1. Shankle testified that his father's death certificate showed a myocardial infarction as the cause of death.

deed, Dr. Wasserman asserted that, even if Shankle had *none* of the risk factors he described, he still would be of the view that there was no connection between Shankle's occupation and his heart disease.

Prior to trial in the judicial review action, Shankle moved *in limine* to exclude Dr. Wasserman's video-taped deposition testimony. Wasserman, he declared, rejected outright the presumption created by the Legislature, and, quoting from *Stephens v. Workmen's Comp. Appeals Bd.*, 20 Cal.App.3d 461, 467, 97 Cal.Rptr. 713 (1971), which dealt with a comparable California statute, he urged that "[i]t is impermissible for a compensation carrier to 'repeal' this legislation, wiping out the presumption created by [the statute] by seeking out a doctor whose beliefs preclude its possible application." Such testimony, he added, would create confusion in the minds of the jurors, who would hear from the court about the legislative presumption and hear from Dr. Wasserman that there was no medical basis for the presumption, and that the testimony should therefore be excluded under Maryland Rule 5–403. Though acknowledging that Dr. Wasserman does not believe occupational stress is associated with heart disease, defense counsel complained that, unless Dr. Wasserman was permitted to express that opinion, the legislative presumption, which this Court held was rebuttable, would become incapable of being rebutted and would assume the status of strict liability.

Relying, in part, on our conclusion in *Franch v. Ankney*, 341 Md. 350, 365, 670 A.2d 951, 958 (1996) that trial judges may strike expert opinions based on an incorrect interpretation of Maryland law, the court granted Shankle's motion and excluded Dr. Wasserman's testimony. As Wasserman was the city's only medical witness, the exclusion left the city without any evidence to rebut the statutory presumption of compensability and, accordingly, the court granted summary judgment for the claimant. The city appealed, and, as noted, the Court of Special Appeals affirmed. *Shankle, supra*, 136 Md.App. 339, 765 A.2d 1008. We shall also affirm.

### DISCUSSION

■ As we made clear in *Montgomery Co. Fire Bd. v. Fisher*, 298 Md. 245, 259, 468 A.2d 625, 632 (1983) and *Lovellette v. Mayor and City Council of City of Baltimore*, 297 Md. 271, 284, 465 A.2d 1141, 1148 (1983), and in some earlier cases cited in those decisions, LE § 9–503 constitutes a legislative determination that there *is* a correlation between job stress and heart disease with respect to fire fighters and police officers.[2] In furtherance of that determination, the Legislature has created a presumption of compensability when a fire fighter or police officer contracts heart disease. In *Lovellette, supra,* 297 Md. at 284, 465 A.2d at 1148, which dealt with a comparable provision in LE § 9–503(a) regarding fire fighters, we held that the presumption, though one of compensability, was one of fact, and that it applied without regard to the circumstances under which the disabling heart disease first became evident. A year later, in *Fisher, supra,* 298 Md. at 257, 468 A.2d at 631, we concluded that the presumption— again with respect to fire fighters—was a "Morgan-type" presumption that was not dissipated by the introduction of rebutting evidence but remained in the case as affirmative evidence. We held:

> "Although the presumption of compensability is a rebuttable one of fact, the legislature manifestly intended that the statute impose a formidable burden on the party against whom it operates. Accordingly, both the burden of production and the burden of persuasion remain fixed on the employer; neither ever shifts to the claimant and the presumption constitutes affirmative evidence on the fire fight-

---

2. Section 9–503 is not unique. Larson points out, there has been "the burgeoning in all parts of the country of statutes granting special compensation coverage to firemen and policemen or both, for respiratory and heart diseases connected with the exertions of employment." 3 ARTHUR LARSON & LEX K. LARSON, WORKERS' COMPENSATION LAW § 52.07[2] (2001). He observes that, although no two such statutes are identical, "[m]ost establish a presumption of work connection when these diseases result from performance of active service." *Id.*

er's behalf throughout the case, notwithstanding the production of contrary evidence by the other side."

*Id.* at 257–58, 468 A.2d at 631.

■ We have regarded the presumption as one of fact that may be rebutted by evidence that a particular claimant's heart disease was *not* the result of job stress. The presumption is not, therefore irrebuttable and does not create strict liability on the part of the employer whenever a fire fighter or police officer develops heart disease.

Much of the city's concern arises from its reading of the Court of Special Appeals decision in *Montgomery County v. Pirrone*, 109 Md.App. 201, 674 A.2d 98 (1996), and, in particular, the statement that "an employee's occupation need be only a factor in order for the employee's disease to be presumed compensable under [§ 9–503]." *Id.* at 215, 674 A.2d at 105. The city takes that statement as a requirement that, in order to rebut the legislative presumption, an employer must establish that the claimant's occupation as a fire fighter or police officer could *not* be a factor in causing the disease, thus requiring precisely the kind of testimony that Dr. Wasserman was prepared to give. If that kind of testimony is inadmissible, it urges, the presumption, in effect, becomes irrebuttable.

The city misreads what the court said and held in *Pirrone*. The claimant there had been a fire fighter/paramedic for Montgomery County for 21 years. In January, 1988, he took early retirement and, at some point, began working at two other jobs. In October, 1989, he suffered a heart attack, and in 1990, he filed a workers' compensation claim, asserting that he suffered from occupational heart disease arising from his long service as a fire fighter. *Id.* at 206–08, 674 A.2d at 101. The principal issue in the case was whether he was covered by the presumption; Montgomery County asserted that the presumption did not apply to a retired fire fighter, but the Court of Special Appeals concluded otherwise. The court first pointed out that testimony from experts for both sides (one of whom, we are informed, was Dr. Wasserman) was in agree-

ment that Pirrone had coronary artery disease prior to his retirement. *Id.* at 210–11, 674 A.2d at 103. The trigger to liability, it said, was the date of the last injurious exposure to the hazard of the disease, not the date of disability, and, although the nexus between an occupational disease and an occupation may become more remote, and the presumption easier to rebut, when the employee leaves the employment following a last injurious exposure, the termination of the employment does not render the presumption inapplicable. *Id.* at 212, 674 A.2d at 103–04.

The statement seized upon by the city here occurred in the context of a discussion over the trial court's refusal to give a jury instruction requested by the employer and its answer to a question from the jury. The employer sought an instruction, based on what is current § 9–502, that "it must be shown 'that it is more probable than not that the disability is causally related to the alleged employment and that no other intervening agency was responsible for the disease.' " *Id.* at 214, 674 A.2d at 104. The appellate court pointed out that the proposed instruction was improper in that, by effectively placing the burden of proof on the *claimant,* it disregarded the presumption, which cast the burden of both production and persuasion on the *employer.* *Id.* at 214, 674 A.2d at 104–05. The jury question was whether the cause of the disease had to be *predominantly* the claimant's occupation, which the trial court answered in the negative. Responding to the employer's complaint about that answer, the Court of Special Appeals commented that "the employee's occupation need be only a factor in order for the employee's disease to be presumed compensable." *Id.*

 *Pirrone* does not require an employer to rule out all possible connection between the disease and the occupation and does not limit rebutting evidence to the generic-negation approach of Dr. Wasserman. In order to rebut the legislative presumption, the employer must offer evidence, persuasive to the jury, that the claimant's disease is, in fact, not attributable

to his/her occupation but is attributable to some other cause.[3] That evidence must be particular to the claimant, however, and not a total and absolute denial of the presumption. It is entirely permissible for an employer's expert to opine that a claimant's heart disease did not result from his/her occupation as a police officer, if there is a sufficient factual basis for that conclusion. It may be, for example, that the claimant was employed in that capacity for only a brief period of time—too short to develop coronary artery disease, or that his/her medical record reveals the full development of the disease prior to his/her becoming a police officer. The evidence in a given case may show that the claimant had a desk job that was free from the kind of stress that normally accompanies police duties. There may be a variety of circumstances from which a medical expert could quite properly opine that the particular claimant's heart disease did not arise from his/her occupation. That kind of evidence, if found persuasive by the trier of fact, could indeed rebut the legislative presumption of compensability, and the jury should be so instructed.

What is not permitted is for an expert to deny or contradict the presumption altogether, simply because the expert does not agree with the basis for it.[4] That kind of testimony is excludible under both Maryland Rules 5–702 and 5–403. Rule 5–702 allows expert testimony "if the court determines that the testimony will assist the trier of fact to understand the

3. It may be, of course, that the disease can be shown attributable in part to the occupation and in part to one or more other causes, in which event the employer's share of the liability for compensation benefits may be reduced. No attempt was made here to allocate causation, however. The city took the position that no part of Shankle's heart disease was attributable to his employment as a police officer.

4. We are not dealing here with a legislative declaration that is utterly without any factual or scientific support whatever and therefore is wholly capricious. Apart from the fact that many other State legislatures have reached the same conclusion, presumably after legislative hearings, even Dr. Wasserman acknowledged that support for the connection between occupational stress and heart disease appears in the medical literature, although he clearly did not accept that premise or, indeed, the quality of that literature.

evidence or to determine a fact in issue." In making that determination, the court must consider, among other things, "the appropriateness of the expert testimony on the particular subject." Rule 5–702(2). Rule 5–403 permits the exclusion of even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

As Shankle pointed out, Wasserman's opinion that there is no correlation whatever between occupational stress and heart disease could hardly assist the jury in determining causation in light of the legislative presumption. That kind of opinion could only serve to confuse the issue and mislead the jury.

Both sides have cited a number of out-of-State decisions— those that favor their respective positions. We have not ignored those cases. As Larson has noted, the statutes around the country vary in their details, and the decisions interpreting them have also varied. He observes, in that regard, that "[t]he possible grounds for rebutting the presumption vary so widely that the end product varies from a virtually irrebuttable to a virtually worthless presumption." 3 ARTHUR & LEX K. LARSON, WORKERS' COMPENSATION LAW § 52.07[2](a) (2001). There is a sufficient basis in Maryland law to reach the conclusion we do, and an analysis of the out-of-State cases, which would require a careful explanation of any statutory differences, would be of marginal utility and not, in the end, affect the result. The Circuit Court did not err in excluding Dr. Wasserman's testimony, and the Court of Special Appeals was correct in upholding the exclusion.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.