JUSTICE GABRIEL,
dissenting.
¶46 The plurality concludes that the respondent online travel companies (“OTCs”) furnished lodging within the meaning of the Denver Revised Municipal Code (the “Code”) because they sold or provided to customers for consideration the right to the overnight use of rooms or accommodations. See pi. op. ¶¶ '23-24. The plurality thus concludes that the OTCs are “vendors” subject to Denver’s lodging tax. See id. at ¶¶ 25, 28. The plurality further concludes that the fees charged by the ÓTCs for them services were directly connected with furnishing rooms. See id. at ¶¶ 29-30, 33-35. Accordingly, the plurality concludes that these fees were part of the cost of lodging and were also subject to Denver’s lodging tax. See id.
¶47 Because ,1 do not believe that Denver’s ordinances support these conclusions, I respectfully dissent.
I. Analysis
'¶48 I first address the applicable standard of review and principles of construction of municipal ordinances such as those at issue here. I proceed to address whether the OTCs furnished lodging, which would render them “vendors” subject to' Denver’s lodging tax. I conclude by considering whether the fees charged by the OTCs to their customers were directly connected with the furnishing of rooms or accommodations and thus subject to Denver’s lodging tax.
A. Standard of Review and Principles of Construction
• ¶49 When reviewing a municipal ordinance or code, we - construe it using the same rules that we use when we interpret statutes. See Town of Erie v. Eason, 18 P.3d 1271, 1275 (Colo. 2001).
*1141 ¶50 We review de novo questions of law concerning statutory construction. City of Littleton v. Indus. Claim Appeals Office, 2016 CO 25, ¶ 27, 370 P.3d 157, 165.
¶51 Our purpose in interpreting a statute or ordinance is to give effect to the intent of the legislature or city council. See id. at ¶ 27, 370 P.3d at 166-66. To discern this intent, we look first to the language of the statute or ordinance. See id. at ¶ 27, 370 P.3d at 166. We construe the statute or ordinance as a whole to give effect and meaning to all of its parts, and we avoid interpretations that render provisions either superfluous or absurd. Id.; Concerned Parents of Pueblo, Inc. v. Gilmore. 47 P.3d 311, 313 (Colo. 2002).
¶52 If the applicable language is clear and unambiguous, we do not resort to legislative history or other rales of construction. City of Littleton, ¶ 27, 370 P.3d at 166. Rather, we give the words used their plain and ordinary meanings. See Concerned Parents, 47 P.3d at 313.
¶53 If, however, the language of the statute or ordinance is ambiguous, then we may examine the legislative intent, the circumstances surrounding the adoption of the statute or ordinance, and the possible consequences of various interpretations to determine the proper construction of that statute or ordinance. Coffman v. Williamson, 2015 CO 35, ¶ 23, 348 P.3d 929, 936. A statute or ordinance is ambiguous if it is reasonably susceptible of multiple interpretations. Id.
¶54 Finally, I note that “[i]t is a longstanding rale of construction in this jurisdiction that tax statutes ‘will not be extended beyond the clear import of the language used, nor will their operation be extended by analogy,,.. All doubts will be construed against the government and in favor of the taxpayer.’ ” City of Boulder v. Leanin’ Tree, Inc., 72 P.3d 361, 367 (Colo. 2003) (quoting Transponder Corp. v. Prop. Tax Admin., 681 P.2d 499, 504 (Colo. 1984)). In this regard, I disagree with the plurality’s assertion that the foregoing “longstanding rule” is akin to the rale of lenity in criminal law and thus is to be applied only as a rule of last resort. See pi, op, ¶¶ 16-17. None of the parties made any such argument in this case, the plurality cites no case so holding, nor have I, seen.one.: Accordingly, although I understand the plurality’s desire to avoid the settled rale that, ambiguous tax provisions will be construed against the taxing authority,[1] I do not believe that it can properly do so here.
B. Furnishing Lodging
¶55 Section 53467(b)- of the Code provides, in pertinent part, “[EJvery vendor who , shall make a sale of lodging to a purchaser in the city shall collect the tax imposed by this article to the total purchase price charged-for such lodging furnished at any one (1) time by or to every customer or buyer.”. Denver, Colo., Revised Municipal Code § 537167(b) (2016). . .
¶56 The Code'defines “vendor” as “a person making sales of or furnishing lodging to a purchaser in the city.” § 53-170(8).
¶57 “Sale,” in turn, is defined as the “furnishing for consideration by any person of lodging within the city.” § 53-170(4).
¶58 The question presented here is, thus, whether the OTCs furnished lodging within the meaning of the Code, thereby rendering them “vendors” subject to Denver’s lodging tax. ...
¶59 Under the Code,
[Ijodging shall mean rooms or accommodations for overnight use furnished by any person or the representative of any person to any person who for consideration uses, possesses, occupies or has the right to use, possess or occupy any such room or accommodation in a hotel, apartment hotel, lodging house, motel, motor hotel, guest house, guest ranch, resort, mobile home, mobile home park, auto court, inn, trailer court, trailer park or hotel, under any concession,, permit, lease, contract,, license to use or other similar arrangement.
§ 53-170(2).
¶60 Accordingly, “lodging” is a room or accommodation for overnight use; it is not the right to use a room, as the' plurality *1142 states. See' pi. op. ¶ 23. Because it is undisputed that the OTCs have not provided either rooms or accommodations, in my view, they have not furnished “lodging” within the meaning of the Code. As a result, they are hot' “vendors” subject to Denver’s lodging tax.
¶61 In reaching this conclusion, I acknowledge that section 53-170(2)’s definition of “lodging” refers to the right to use a room or accommodation. As I read that portion of the definition, however, the phrase “right to use, possess, or occupy any such room or- accommodation” modifies “any person” who has that right. § 53-170(2). Thus, in my view; the section plainly means that lodging is a room or accommodation furnished to any person who has the right to use, possess, or occupy that room or accommodation. Id. To construe this provision to define “lodging” simply as the right to use a room or accommodation would read words out of the ordinance, and we cannot do that. See City of Littleton, ¶ 27, 370 P.3d at 166.
¶62 Even if the language of the ordinance could reasonably be construed to define lodging as the right to use a room or lodging, however, any such reading would be one of multiple reasonable constructions. Accordingly, at best, this provision is ambiguous, and therefore, we must construe it against the city and in favor of the OTCs. See City of Boulder, 72 P.3d at 367.
¶63 For these reasons, I would conclude that the OTCs have not furnished lodging to customers and, thus, are not “vendors” subject to Denver’s lodging tax.
C. Fees Charged By The OTCs
¶64 With respect to the fees charged by the OTCs, section 53-171(c) of the Code provides, “The purchase price paid or charged for lodging shall exclude the' price paid by the purchaser for any goods, services or commodities other than those directly connected with, and included in the price of, the furnishing of rooms or accommodations.” Thus, the purchase price that a customer pays to an OTC includes any fees “directly connected with” the furnishing of rooms or accommodations. See § 53-171(c).
¶65 The question presented here thus becomes whether the fees charged by the OTCs to their customers were directly connected with or part of the purchase price for furnishing rooms or accommodations, so as to render them subject to Denver’s lodging tax.
¶66 As noted above, under my reading of the pertinent provisions of the Code, the OTCs did not furnish rooms or accommodations to their customers. Thus, by definition, the fees that the OTCs charged were not directly connected with or part of the purchase price for furnishing rooms or accommodations, and therefore, they were not subject to Denver’s lodging tax.
II. Conclusion
¶67 For these reasons, I respectfully dissent.
I am authorized to state that CHIEF JUSTICE RICE and JUSTICE EID join in this dissent.

. To reach its conclusions, the plurality must strain against the text of the municipal ordinances at issue and ignore reasonable interpretations thereof that differ from its own.